**DONATO J. BATTISTA**
**HUDSON COUNTY COUNSEL**
**ADMINISTRATION BUILDING ANNEX**
**567 PAVONIA AVENUE**
**JERSEY CITY, NEW JERSEY 07306**
**(201) 795-6250**
**BY:    DANIEL J. DESALVO (State Bar No.: 010402006)**
**       DEPUTY COUNTY COUNSEL**
**       ATTORNEY FOR E. JUNIOR MALDONADO, in his official capacity as the   Hudson**
**County Clerk**

---

| | |
|---|---|
| **EUGENE MAZO** | **: UNITED STATES DISTRICT COURT** |
| | **: DISTRICT OF NEW JERSEY** |
| **Plaintiffs,** | **:** |
| | **: CIVIL ACTION NO.: 20-8336 (SDW-LDW)** |
| **v.** | **:** |
| | **:** |
| **E. JUNIOR MALDONADO, in his official** | **:    *CROSS NOTICE OF MOTION*** |
| **capacity as Hudson County Clerk,** | **:    *FOR SUMMARY JUDGMENT*** |
| **et als.** | **:** |
| | **:** |
| **Defendants.** | **:** |

---

**TO:    Clerk, United States District Court**
**District of New Jersey**
**MLK, Jr. Federal Building and U.S. Courthouse**
**50 Walnut Street**
**Newark, N.J. 07102**

1.    **Moving Party:**          Defendant, E. Junior Maldonado, in his official
                             capacity as the Hudson County Clerk.

2.    **Return Date of Motion:    TO BE SET BY COURT**

3.    **Place:**                 Federal District Court Clerk
                             District of New Jersey
                             50 Walnut Street
                             Newark N.J. 07101

4.    **Purpose:**               Order for Cross Motion to Dismiss pursuant
                             to Fed R. Civ. P. 12(b)(6)

5.   **Supporting Documents:**         The County relies upon the Certification of Daniel J. DeSalvo, Esq. and supporting Letter Brief filed with this motion.

6.   **Oral Argument:**                Movant waives oral argument and submits its motion on the papers

7.   **Pretrial Order/Conference:**    There does not exist a pretrial order or a pretrial conference.

I certify that copies of this Cross Notice of Motion to Dismiss Pursuant to Fed R. Civ. P. 12(b)(6), together with supporting Certification, proposed form of Order and supporting Letter Brief were electronically filed with the Federal Court Clerk.

Donato J. Battista
Hudson County Counsel

**s/Daniel J. DeSalvo**
Daniel J. DeSalvo
Deputy County Counsel

Dated: September 24, 2020

**DONATO J. BATTISTA**
**HUDSON COUNTY COUNSEL**
**ADMINISTRATION BUILDING ANNEX**
**567 PAVONIA AVENUE**
**JERSEY CITY, NEW JERSEY 07306**
**(201) 795-6250**
**BY:    DANIEL J. DESALVO - (State Bar No.: 010402006)**
**DEPUTY COUNTY COUNSEL**
**ATTORNEY FOR E. JUNIOR MALDONADO, in his official capacity as Hudson County**
**Clerk**

---

| | |
|---|---|
| **EUGENE MAZO** | **: UNITED STATES DISTRICT COURT** |
| | **: DISTRICT OF NEW JERSEY** |
| **Plaintiffs,** | **:** |
| | **: CIVIL ACTION NO. 20-8336 (SDW-LDW)** |
| **v.** | **:** |
| | **:** |
| **E. JUNIOR MALDONADO,** | **:** |
| **In his official capacity as Hudson** | **:**          ***ORDER*** |
| **County Clerk, et als.** | **:** |
| | **:** |
| **Defendants.** | **:** |

---

This matter having been brought before the Court by the Hudson County Counsel's Office, Daniel J. DeSalvo, Deputy County Counsel, appearing and the Court having considered the moving papers, and good cause having been shown;

**IT IS** on this                    day of                          , 2020

**ORDERED**, that the motion of Defendants to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6), be and the same is hereby granted; and it is further

**ORDERED,** that Plaintiff's complaint be and the same is hereby is dismissed with prejudice; and it is further

**ORDERED,** that a copy of this Order be served upon all counsel within _____

days of the date hereof.

_____

**DONATO J. BATTISTA**
**HUDSON COUNTY COUNSEL**
**ADMINISTRATION BUILDING ANNEX**
**567 PAVONIA AVENUE**
**JERSEY CITY, NEW JERSEY 07306**
**(201) 795-6250**
**BY:    DANIEL J. DESALVO (State Bar No.:    010402006)**
**DEPUTY COUNTY COUNSEL**
**ATTORNEY FOR DEFENDANT, E. JUNIOR MALDONADO, in his official capacity as the**
**Hudson County Clerk**

---

| | |
|---|---|
| **EUGENE MAZO** | : **UNITED STATES DISTRICT COURT** |
| | : **DISTRICT OF NEW JERSEY** |
| **Plaintiffs,** | : |
| | : **CIVIL ACTION NO: 20-8336 (SDW-LDW)** |
| **v.** | : |
| | : |
| **E. JUNIOR MALDONADO, in his official** | :    *CERTIFICATION OF* |
| **Capacity as Hudson County Clerk** | :    *DANIEL J. DESALVO* |
| **Et als** | : |
| | : |
| **Defendants.** | : |

---

I, Daniel J. DeSalvo, hereby certify as follows:

1.    I am an attorney at law in the State of New Jersey entrusted with the management of the within matter.

2.    On or about August 7, 2020 Plaintiff filed a complaint in the Federal District Court for the District of New Jersey. [Attached hereto as Exhibit "A]

3.    Thereafter Defendant, Joanna Rajoppi, filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

4.    Counsel for co-Defendants, Tahesha Way, Christopher Durkin, Paula Sollami Covello, Elaine Flynn and Steve Peter, have already filed Motions to Dismiss and

this application is to cross move with respect to those motions and to join those motions in an application to dismiss Plaintiff's complaint.

5.      By Order of September 1, 2020, the Defendant Maldonado was given permission to file this Motion to Dismiss within thirty (30) days.

6.      In support of its motion Defendant E. Junior Maldonado, I am relying on the Letter Brief in Support of its Motion to Dismiss and the arguments raised in Defendant Rajoppi's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

A proposed form of Order is included with this Notice of Motion.

I certify that the foregoing statements are true.    I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


**s/Daniel J. DeSalvo**
Daniel J. DeSalvo
Deputy County Counsel

Dated: September 24, 2020

# EXHIBIT "A"

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION

| | |
|---|---|
| EUGENE MAZO, | |
| *Plaintiff*, | Civil Action No. _____ |
| v. | |
| CHRISTOPHER J. DURKIN, in his official capacity as Essex County Clerk, | COMPLAINT |
| E. JUNIOR MALDONADO, in his official capacity as Hudson County Clerk, | |
| JOANNE RAJOPPI, in her official capacity as Union County Clerk, | |
| TAHESHA WAY, in her official capacity as New Jersey Secretary of State, | |
| *Defendants*. | |

Walter M. Luers, Esq.
LAW OFFICES OF WALTER M. LUERS, LLC
The Corbit Building
67 Beaver Ave., Suite 18
Annandale, NJ 08801
908-894-5656
wluers@luerslaw.com
*Counsel of Record for Plaintiff*

NATURE OF ACTION

1.     Plaintiff Eugene Mazo is a Democratic candidate for U.S. Congress in New Jersey's Tenth

Congressional District in the primary election scheduled to take place on July 7, 2020. He alleges

that New Jersey's primary election ballot bracketing system violates his rights under the First and Fourteenth Amendments to the United States Constitution. *See* U.S. Const. amends. I, XIV.

2.      Ballot position is extremely important in elections. Candidates whose names appear first on a ballot receive an advantage based on their ballot position. This is due to a principle known as "position bias" or "primacy effect." This principle has been the subject of extensive research with respect to the behavior of voters. When a state's law systemically stacks the deck in favor of certain candidates by extending them preferential ballot treatment, it creates significant barriers to the electoral chances of candidates who are excluded from receiving such preferences. Such a preference system for certain candidates at the expense of other candidates undermines the integrity of elections and hinders democracy. Nonetheless, it is endemic to New Jersey.

3.      New Jersey is the only state in the country that organizes its primary election ballots by bracketing certain groups of candidates together in a column or row, rather than by listing all candidates' names by the office they seek.  Over the years, New Jersey's primary ballots have been weaponized by political insiders and used to bestow insurmountable advantages upon so-called "bracketed" candidates, while crushing the electoral chances of candidates who run on their own.

4.      New Jersey's unique ballot bracketing system results from a combination of state statutes and state case law. Together, these work to determine how the state's primary ballots are designed. Bracketed primary candidates appear on the ballot in most counties in New Jersey on the same column or row as one another, and their names also appear next to each other with the same six-word slogan. Such bracketed candidates win virtually every primary election in the state.

5.      New Jersey law works to ensure that bracketed candidates receive preferential treatment over unbracketed candidates. Among other things, the names of bracketed candidates are drawn in a preferential ballot draw, which gives these candidates a higher likelihood of appearing on the

first column or row of a primary ballot. By contrast, candidates who do not bracket with other candidates are subject to non-preferential ballot draws and have no ability to be featured on the first line or row of a primary ballot. Furthermore, county clerks in New Jersey frequently place unbracketed candidates in obscure positions on the ballot, far away from bracketed candidates, even though both the bracketed and unbracketed candidates are running for the same office.

6.      Because the law in New Jersey systematically fails to provides the same rights and opportunities to bracketed and unbracketed candidates who may be running for the same office, that law violates both the constitutional First Amendment rights of association and the Fourteenth Amendment rights of equal protection of all unbracketed candidates.

7.      New Jersey's ballot bracketing system is unconstitutional. It bestows an arbitrary advantage upon candidates who choose to bracket or associate with other candidates on the same ballot, while it injures unbracketed candidates who consciously choose to run on their own. New Jersey's bracketing system taints elections by conferring a state-sponsored ballot advantage on bracketed candidates, an advantage that political insiders exploit to win elections again and again.

8.      New Jersey's bracketing system also burdens the voting rights and associational rights of voters by making it more difficult for them to elect the unbracketed candidates of their choice.

9.      To remedy these injuries, Plaintiff seeks injunctive relief against New Jersey's ballot bracketing system and a declaration that New Jersey's primary election ballots and ballot bracketing system are unconstitutional. Plaintiff alleges and contends that the state's ballot bracketing system violates his First Amendment and Fourteenth Amendment rights under the United States Constitution. New Jersey's ballot bracketing system fails to meet the requirements of strict scrutiny, serves no compelling interest, and is not narrowly tailored to any such interest.

JURISDICTION

10.     This Court has jurisdiction because this action arises out of the First and Fourteenth Amendments. *See* 28 U.S.C. § 1331.

11.     This Court has jurisdiction because this action arises under Section 1 of the Civil Rights Act of 1871.  *See* 42 U.S.C. §§ 1983, 1988; 28 U.S.C. § 1343(a).

12.     This Court has jurisdiction to grant relief under the Declaratory Judgment Act. *See* 28 U.S.C. §§ 2201 and 2202.

VENUE

13.     Venue is proper under 28 U.S.C. §§ 1391(b)(1) ("a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located") and (b)(2) (the "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

PARTIES

14.     Plaintiff Eugene Mazo is a 2020 candidate for the Democratic Party nomination for the U.S. House of Representatives in New Jersey's Tenth Congressional District.

15.     Defendant Christopher Durkin, in his official capacity as Essex County Clerk, furnishes, prepares, stores, and distributes primary election ballots in New Jersey's Tenth Congressional District. *See* N.J. Stat. §§ 19:9-2; 19:14-19.

16.     Defendant E. Junior Maldonado, in his official capacity as Hudson County Clerk, furnishes, prepares, stores, and distributes primary election ballots in New Jersey's Tenth Congressional District. *Id.*

17.     Defendant Joanne Rajoppi, in her official capacity as Union County Clerk, furnishes, prepares, stores, and distributes primary election ballots in New Jersey's Tenth Congressional District. *Id.*

18.     Defendant Tahesha Way, in her official capacity as New Jersey Secretary of State, is the chief election official in New Jersey. *See* N.J. Stat. § 52:16A-98(b).

<u>FACTS</u>

**Plaintiff's Background**

19.     Plaintiff Eugene Mazo is a candidate for the U.S. House of Representatives and is running in the Democratic primary in New Jersey's Tenth Congressional District. New Jersey's Democratic primary election is scheduled to take place on July 7, 2020. Mazo is a law professor and a nationally recognized expert in election law. He has published numerous books and articles about the law of democracy and the regulation of the political process in the United States.

20.     Mazo is running for U.S. Congress on a pro-democracy and anti-corruption platform. His political beliefs are unique in a way that do not make it easy for him to bracket with any other candidates on the Democratic primary ballot. As such, Mazo purposely decided not to bracket with any other candidates running for any other office in the Democratic primary of July 7, 2020.

21.     If Mazo is elected to Congress, he intends to seek re-election in 2022. If Mazo is defeated in the 2020 primary or general election, then he intends to be a candidate for the 2022 Democratic Party nomination for the U.S. House of Representatives in the Tenth Congressional District. In 2022, Plaintiff again does not intend to bracket with any other candidates on the primary ballot.

22.     Accordingly, this challenge will "fit comfortably within the established exception to mootness for disputes capable of repetition, yet evading review." *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (collecting cases). "That exception applies where (1)

the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id*.

### Plaintiff's Position on the Democratic Primary Ballots

22.     On March 30, 2020, Mazo filed a candidate petition with the New Jersey Division of Elections asking for his name to appear on the Democratic primary ballot in New Jersey's Tenth Congressional District. New Jersey's Tenth Congressional District encompasses portions of Essex, Hudson, and Union counties. Mazo's candidate petition contained 254 valid petition signatures. A congressional candidate needs 200 signatures to qualify for the ballot. *See* N.J. Stat. § 19:23-8.

23.     Each County Clerk's office conducted its ballot draw on or about April 9, 2020.

### A.     The Essex County Ballot Draw

24.     Defendant Durkin conducted a preferential ballot draw for Essex County's primary ballot by drawing among bracketed candidates first. He initially decided to draw for the ballot by U.S. Senate candidate. Defendant Durkin first drew U.S. Senate candidate Cory A. Booker's name, and thus caused Booker and every candidate who bracketed with Booker to appear on Row A of the Essex County primary ballot. As a result of Defendant Durkin's preferential ballot draw, Mazo's primary opponent Donald M. Payne Jr., the only congressional candidate who had bracketed with Booker, was automatically placed in Row A on the Essex County Democratic primary ballot.

25.     The second U.S. Senate candidate's name that Defendant Durkin chose in the preferential ballot draw was Lawrence Hamm. As a result, Defendant Durkin caused Hamm and the names of all candidates bracketed with Hamm to appear on Row B of the Essex County primary ballot. Hamm is the only other U.S. Senate candidate running in the Democratic primary against Booker.

26.     Since U.S. Presidential candidate Joseph R. Biden had bracketed with Booker, Defendant Durkin caused Biden's name to appear on Row A of the Essex County primary ballot.

27.     After the initial preferential ballot draw had been conducted by U.S. Senate candidate, the only presidential candidate remaining was Bernie Sanders. Defendant Durkin placed Sanders on Row C of the Essex County primary ballot. All of the county candidates running in Essex County, including the county freeholder candidates, had bracketed either with Booker or Hamm, and Defendant Durkin caused their names to appear on either Rows A or B of the primary ballot.

28.     Two remaining congressional candidates, Mazo and John J. Flora, had not bracketed with anyone else in Essex County. Durkin thus drew among their names next in a non-preferential ballot draw. Mazo's name was drawn first in this non-preferential ballot draw.

29.     When Defendant Durkin designed the Essex County primary ballot, he caused Mazo's name to be placed in Row C. Mazo's name appears in the same row as presidential candidate Bernie Sanders. This is despite the fact that Mazo did not request to bracket with Sanders, is using a different ballot slogan from Sanders, and does not share many of Sanders's views. Beyond Sanders and the names of his corresponding Democratic national convention delegates, no other candidate for any other office is listed on Row C of the Essex County primary ballot.

30.     In addition to Flora, Donald M. Payne Jr. is Mazo's other opponent in the Democratic primary. By bracketing with Booker, Payne's name was guaranteed to appear on Row A or B of the Essex County primary ballot. By not bracketing with anyone else, Mazo's name could not appear on Row A or B of the Essex County primary ballot. It could only appear in Rows C or D. Thus, in choosing to exercise his First Amendment rights, Mazo did not receive the same equal protection of the laws as Payne, the one bracketed candidate running for the same office as Mazo. By bracketing, Payne will benefit from a primacy effect in the primary on July 7, 2020.

31.     Mazo contends that the Essex County ballot and the way it was drawn violates his First and Fourteenth Amendment rights. A ballot from the Essex County Clerk's Office for the July 7, 2020, Democratic primary from the Township of Bloomfield shows Mazo's ballot position:



**Official Ballot**
Primary Election, Tuesday, July 7th, 2020,  Essex County, New Jersey

**Papeleta Oficial**
Elección Primaria,  el 7 de Julio de 2020

2 Township of Bloomfield W1 CD10

**Democratic**

Christopher J. Durkin
*Essex County Clerk*
*Secretaria del Condado de Essex*

| Office / Cargo | Choice for President / Vote for One / Selección para Presidente / Vote por Uno | Choice for President and Delegate to the Democratic National Convention / 15th Delegate District / Selección para Presidente y Delegados a la Convención Nacional Democrática / Distrito de Delegados 15 | For United States Senator / Six Year Term / Vote for One / Para Senador de los Estados Unidos / Vote por Uno | For Member of the House of Representatives / 10th District / Vote for One / Para Miembro de la Casa de Representantes / Vote por Uno | For County Clerk / Five Year Term / Vote for One / Para Secretario del Condado / Vote por Uno | Board of Chosen Freeholders At Large / Three Year Term / Vote for Four / Para Miembros del Consejo de Propietarios Electos En General / Vote por Cuatro | | | | For Board of Chosen Freeholders / 5th District / Vote for One / Para Consejo de Propietarios Electos / Vote por Uno | For Township Council / 1st Ward / Vote for One / Para Consejo Municipal / Vote por Uno |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **A** | Joseph R. **BIDEN** *Essex County Democratic Committee, Inc.* 1A ○ | *Biden for President* Delegates: Luis Quintana, Wartyna Nina Davis, M. Teresa Ruiz, Aníbal Ramos, Charles Hall. Alternate Delegate: Miriam Tennant | Cory **BOOKER** *Essex County Democratic Committee, Inc.* 2A ○ | Donald M. **PAYNE, Jr.** *Essex County Democratic Committee, Inc.* 3A ○ | Christopher J. **DURKIN** *Essex County Democratic Committee, Inc.* 4A ○ | Patricia **SEBOLD** *Essex County Democratic Committee, Inc.* 5A ○ | Rufus I. **JOHNSON** *Essex County Democratic Committee, Inc.* 6A ○ | Brendan W. **GILL** *Essex County Democratic Committee, Inc.* 7A ○ | Romaine **GRAHAM** *Essex County Democratic Committee, Inc.* 8A ○ | Carlos M. **POMARES** *Essex County Democratic Committee, Inc.* 9A ○ | Jenny **MUNDELL** *Essex County Democratic Committee, Inc.* 10A ○ |
| **B** | | | Lawrence **HAMM** *Not Me. Us.* 2B ○ | | | Sabre **BURROUGHS** *Not Me. Us.* 5B ○ | Anthony **DIAZ** *Not Me. Us.* 6B ○ | Simone **JELAS-BANDSON** *Not Me. Us.* 7B ○ | | | |
| **C** | Bernie **SANDERS** *Bernie 2020 Not Me. Us.* 1C ○ | *Bernie 2020. Not Me. Us.* Delegates: Sara Callinan; Nyle Fort, Ted Glick, Nawon Kim, Analilia Mejia, Robert Earl Rogers, Jr. Alternate Delegate: Lisa Zeiger | | Eugene D. **MAZO** *Essex County Progressive Democratic Committee, Inc.* 3C ○ | | | | | | | |
| **D** | Uncommitted 1D ○ | Delegates: Asia Norton, John Smith, Jean Jackson Harris, Charles Breslin | | John J. **FLORA** *United By One Cause* 3D ○ | | | | | | | |
| *personal choice / selección personal* | *personal choice / selección personal* ○ | | *personal choice / selección personal* ○ | *personal choice / selección personal* ○ | *personal choice / selección personal* ○ | *personal choice / selección personal* ○ | *personal choice / selección personal* ○ | *personal choice / selección personal* ○ | *personal choice / selección personal* ○ | *personal choice / selección personal* ○ | *personal choice / selección personal* ○ |

PLEASE SEE INSTRUCTIONS ON THE BACK OF THIS BALLOT. ☞
VEA EL REVERSO DE ESTA PAPELETA PARA INSTRUCCIONES. ☞

## B.     The Hudson County Ballot Draw

32.     On April 9, 2020, the Hudson County Clerk's Office also conducted a preferential ballot draw. Defendant Maldonado elected to draw for the ballot by U.S. Senate candidate first. However, Defendant Maldonado drew U.S. Senate candidate Lawrence Hamm's name ahead of Booker. As such, Defendant Maldonado caused Hamm's name and all candidates bracketed with Hamm to appear on Column A of the Hudson County primary ballot. He then caused Booker and all candidates bracketed with Booker to appear on Column B of the Hudson County primary ballot.

33.     Hudson County, unlike Essex County, runs its candidate brackets by columns, not rows.

34.     Defendant Maldonado next drew from candidates for U.S. President. Since presidential candidate Joseph R. Biden had bracketed with Booker in Hudson County, Biden's name was placed on Column B of the Hudson County primary ballot. The remaining down-ballot candidates running for other positions in Hudson County, including for county freeholder, had bracketed with either Booker or Hamm, and thus their names all appear on Rows A or B of the primary ballot.

35.     Two remaining congressional candidates, Mazo and John J. Flora, had not bracketed with anyone else in Hudson County. Maldonado drew among their names next in a non-preferential ballot draw. Mazo's name was drawn first in this non-preferential ballot draw.

36.     Defendant Maldonado placed Mazo in Column D of the Hudson County primary ballot, all by himself. In addition to Flora, Mazo's only other opponent in the Democratic primary, Donald M. Payne Jr., bracketed with Booker. Payne's name was thus guaranteed to appear in Column A or B of the Hudson County primary ballot. By not bracketing with anyone else on the Hudson County ballot, Mazo's name could not appear on Column A, B, or C of the Hudson County primary ballot. It could only appear in Columns D, E, or F. Thus, in choosing to exercise his First Amendment rights, Mazo did not receive the same equal protection as Payne, a bracketed candidate who is also running for Congress. Payne will benefit from a primacy effect on July 7, 2020.

37.     Mazo contends that the Hudson County ballot and the way it was drawn violates his First and Fourteenth Amendment rights. A sample ballot from the Hudson County Clerk's Office for the July 7, 2020, Democratic primary in the City of Jersey City shows Mazo's ballot position:

### C.    The Union County Ballot Draw

38.    On April 9, 2020, the Union County Clerk's Office also conducted a preferential ballot draw, again based on the U.S. Senate candidates first.  Defendant Rajoppi was up for re-election and opted not to conduct the ballot draw herself. Instead, she delegated the drawing to a deputy. Rajoppi's deputy drew U.S. Senate candidate Lawrence Hamm's name first, and then placed Hamm and every candidate bracketed with Hamm on Column A of the Union County primary ballot. Cory Booker's name was drawn next, and the deputy placed Booker and the name of every candidate bracketed with Booker on Column B of the Union County primary ballot.

39.    The Union County Clerk's Office next conducted a second drawing among county freeholder candidates. There was an independent slate of county freeholder candidates, and they and everyone bracketed with them were placed on Column C. Mazo had not bracketed with county candidates, so he was not included in this next drawing and was thus not eligible for Column C.

40.    Since U.S. Presidential candidate Joseph R. Biden had bracketed with Booker in Union County, Biden's name was placed on Column B of the Union County primary ballot. The only

remaining presidential candidate, Bernie Sanders, found his name placed on Column D. Since Mazo had not bracketed with a presidential candidate, he was not eligible for Column D.

41.    Two remaining Democratic congressional candidates, Mazo and John J. Flora, had not bracketed with anyone else in Union County. Mazo was thus forced to have his name drawn in a secondary, non-preferential ballot draw that was held only between him and Flora.

42.    However, due to a mistake made by the Union County Clerk's Office, Mazo's name was not drawn in this non-preferential ballot draw among the remaining Democratic candidates. Instead, the Union County Clerk's Office mistakenly drew Mazo's name in the Republican draw.

43.    Upon learning of this mistake, Mazo contacted the Union County Clerk's Office and requested that an entirely new ballot draw be conducted. He asked for this so that he would not be disadvantaged in his ballot position vis-à-vis other candidates running for the same office. As he explained to the Union County Clerk's Office, he wanted to have the same opportunity for his name to appear on Column A of the primary ballot as all other candidates for U.S. Congress.

44.    The Union County Clerk's Office responded and admitted its error, but then told Mazo that he could only be placed at the end of the Democratic primary election ballot. The Clerk's Office further informed Mazo that a new ballot draw would not be conducted because he was, simply put, ineligible to obtain ballot position on Column A. This was, wrote the Union County Clerk's Office to Mazo, because he was "not with a bracketed county slate or a US Senate candidate."

45.    Mazo explained to the Union County Clerk's Office that his decision not to bracket was based on his unique political beliefs. He simply holds different political beliefs than other candidates running for the U.S. Senate or a county slate. This meant that he could not bracket with a U.S. Senate candidate or with county candidates, but it also meant that he should not be punished for holding his political convictions. Mazo explained how he found it problematic that he was

ineligible to appear Column A because of his unique political views, but the Union County Clerk's Office simply responded by telling Mazo that U.S. Senate candidates had to be drawn first and that candidates bracketed with them were entitled to be placed in the same ballot column.

46.     The Union County Clerk's Office cited several relevant statutes to support its position and also some case law for Mazo. Thus, the County Clerk's Office, while claiming that it did not "deny" Mazo a position on Column A of the ballot, nevertheless confirmed that the law prevented him from being included in the preferential ballot draw that would allow him to be placed there.

47.     Mazo was placed on the Democratic primary election ballot in Column E, in a column with uncommitted presidential delegates and, in some municipalities, with candidates running for municipal office, even though he did not request to bracket with these candidates and had a different ballot slogan form them.  Beyond such uncommitted presidential delegates and municipal candidates, no other candidates for any other office are listed on the same column as Mazo.

48.     By contrast, by bracketing with Booker, Donald Payne Jr.'s name was guaranteed to appear in Column A or B of the Union County primary ballot. By not bracketing with anyone else on the Union County ballot, Mazo's name could not appear on Column A, B, C, or D of the Union County primary ballot. It could only appear in Columns E or F. Thus, the law treated Mazo differently from his bracketed opponent who was running for U.S. Congress, the same office as Mazo.

49.     Mazo contends that the Union County ballot and the way it was drawn violates his First and Fourteenth Amendment rights. A sample ballot from the Union County Clerk's Office for the July 7, 2020 Democratic primary in the Borough of Roselle Park shows Mazo's ballot position:

## New Jersey's Ballot Bracketing Scheme

50.     New Jersey's ballot bracketing system arises from a series of laws and has developed over the course of several decades. Multiple provisions of New Jersey law work together to create the opportunity for candidates to bracket on the ballot. They include provisions that allow candidates to have the same six-word ballot slogan, for joint petitions to be filed by candidates running for the same county office, for bracketing requests to be filed by candidates who may be running for different offices, and a discretionary preferential ballot draw conducted by the county clerks.

### Slogans

51.     New Jersey allows candidates running for office in a primary election to list a six-word ballot slogan next to their name on the state's primary ballots. *See* N.J. Stat. § 19:23-17.

### Joint Petitions

52.     New Jersey further allows county candidates running for compatible offices who file their petition signatures with a county clerk's office to submit a "joint petition," or a single petition that

lists the candidates' names together on the ballot and allows such joint candidates to appear on the ballot as a unit, again with a common slogan. *See* N.J. Stat. § 19:23-18; N.J. Stat. § 19:49-2.

Bracketing

53.     Further, New Jersey allows candidates running for different offices to bracket with joint petition candidates. The law requires candidates wishing to appear on the same line of the ballot as joint petition candidates to follow specific procedures for bracketing. *See* N.J. Stat. § 19:49-2.

54.     Under state law, candidates who request and receive permission to bracket with joint petition county candidates are entitled to be featured on the same line of the ballot, where their names appear again with the same slogan. *Id.* When such candidates bracket together, only one candidate's name has to be drawn for the ballot, and all other candidates for other offices who bracket with that candidate automatically get placed on the same column or row of the ballot.

55.     Candidate who bracket successfully will be featured on the same column of the ballot with the same slogan.  Once one bracketed candidate's name is drawn for the ballot, all other candidates in the same bracketed slate will be placed in the same column automatically.  In this manner, New Jersey organizes its primary election ballots by columns or rows of bracketed candidates.

Drawings for Ballot Position

56.     County clerks are required to hold a ballot draw to determine the order of placement of various candidates running for the same office on the ballot.  *See* N.J. Stat. § 19:23-24.

57.     New Jersey law sets forth various procedures intended to ensure fairness among candidates whose names are drawn for the ballot. *Id.* However, the courts in New Jersey have created a situation where the equal treatment of candidates often does not occur in practice. That is because bracketed candidates are afforded preferential ballot placement, even though they

themselves do not participate in their county's ballot draw. By contrast, unbracketed candidates are not allowed to participate in the same ballot draw as their rivals running for the same office.

58.     Except in years when candidates for U.S. Senate or Governor are on the ballot, New Jersey law requires that a preferential ballot draw take place among candidates who bracket with joint petition county candidates first. *See* N.J. Stat. § 19:23-26.1.   This means all joint petition county candidates have an opportunity to be included in a clerk's preferential ballot draw.

59.     However, New Jersey case law suggests that in years when a U.S. Senator or Governor's name appears on the ballot, the county clerks should conduct their preferential ballot draws among these offices first.   This is because the law requires candidates for U.S. Senate to be placed on the first column or row of the primary election ballot, and the same is true for candidates for Governor in years when there is no election for U.S. Senate. *See* N.J. Stat. § 19:23-26.1.

60.     Therefore, all candidates running for U.S. Senate or for Governor also have an equal chance of participating in a preferential ballot draw and for their names to be placed on the first column or row of the primary ballot. As a corollary, all candidates running for other offices who bracket with a U.S. Senate candidate or a candidate for Governor can also participate in a county clerk's preferential ballot draw. By contrast, all candidates who are not bracketed with a candidate running for U.S. Senator, Governor, or joint petition county candidates are precluded from participating in a preferential ballot draw. Mazo happens to be one such candidate.

61.     Such unbracketed candidates are not even guaranteed to receive the next available column or row on the ballot after the names of bracketed candidates are assigned.

62.     In primary elections when candidates for U.S. President are on the ballot, some county clerks have, on their own, conducted a preferential ballot draw by presidential candidate, thus providing a ballot advantage to candidates who bracket with candidates for U.S. President.

63.     In election years when candidates for U.S. President, U.S. Senator, Governor, or joint petition county candidates are to appear on the state's primary election ballots, New Jersey's twenty-one county clerks have used unpredictable, varying, and inconsistent methods for conducting their ballot draws. These varying and inconsistent methods make it impossible to know with whom a candidate must bracket in order to participate in the preferential ballot draw.

64.     New Jersey's political insiders, however, know how this system works and have figured out how to game it. In the past, they have managed to do so by running a fully bracketed slate of candidates for every position on the ballot in almost every election. This allows them to be in the preferential ballot draw no matter how the county clerk draws for the ballot.

65.     As a result, New Jersey's political insiders always wind up appearing on either Column A or B (or, in some counties, either in Row A or B) on every single primary ballot. Between 2009 and 2018, according to a recent study, not a single state legislative incumbent running for office on a bracketed slate with other party insiders lost his or her primary election.

66.     Once a county clerk's initial preferential ballot draw occurs, a series of non-preferential ballot draws take place between the remaining unbracketed candidates who are running for all other offices that appear on the primary ballot.  Candidates in these non-preferential ballot draws are never eligible to receive first ballot position on any state ballot.

67.     Importantly, under New Jersey's ballot bracketing laws, any candidate running unbracketed for U.S. Congress will always find himself in a non-preferential ballot draw. Thus, an unbracketed candidate running for U.S. Congress can never obtain favorable ballot position.

68.     This is the position Mazo finds himself in.

### Position Bias/Primacy Effect

69.     Ballot positioning is extremely important to the outcome of elections. It is well-documented that when choosing between candidates on a ballot, a significant percentage of people will demonstrate a bias toward choosing the first candidate whose name is listed. This phenomenon, known as the primacy effect or positional bias, has been studied for years.

70.     The primacy effect strongly influences the behavior of voters.

71.     The primacy effect has also been widely proven to impact elections. Candidates whose names are listed first enjoy a meaningful advantage due solely to the order in which their names appear.  Furthermore, candidates whose names appear listed among other candidates on a bracketed slate receive the advantage of additional votes due to the appearance of the bracket.

72.     To avoid a constitutional injury resulting from a primacy effect, many states have implemented some form of random or rotational system for candidate ballot placement. Ballots in some jurisdictions rotate which candidates receive first ballot position with each election cycle. Other jurisdictions draw candidates for the same office on the ballot randomly or by lot. This makes ballot placement fair and ensures that it is conducted in such a manner such that each candidate running for the same office has an equal chance of obtaining the primary ballot position.

73.     These various safety mechanisms ensure an equal political playing field.

74.     In contrast, when jurisdictions have implemented ballot-order preference practices to provide an advantage to certain types of candidates, state and federal courts have found such ballot ordering arrangements to be discriminatory and unconstitutional.

75.     New Jersey's ballot bracketing system is an example of one such discriminatory and unconstitutional ballot-ordering system. New Jersey's ballot bracketing system severely

burdens an unbracketed candidate's fundamental constitutional rights. Furthermore, the system satisfies no compelling state interest, and it is not narrowly tailored to meet any such interest.

## COUNT ONE

### VIOLATION OF U.S. CONSTITUTION AMENDMENTS I AND XIV

76.  Plaintiff realleges and incorporates by reference paragraphs 1 through 75 of the Complaint as though set forth in full here.

77.  The First Amendment prevents Congress from enacting laws that abridge "the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." *See* U.S. Const. amend. I.

78.  The First Amendment is applicable to the states through the Fourteenth Amendment. *See Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

79.  Through the Fourteenth Amendment, the First Amendment freedom of speech has also been recognized to protect the freedom of association. "Of course, it is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, and state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny." *NAACP v. Alabama*, 357 U.S. 449, 460-61 (1958).  Furthermore, the freedom to associate also includes the freedom not to associate with others.  *California Democratic Party v. Jones*, 530 U.S. 567, 574 (2000).

80.  When a state's administration of elections burdens a fundamental constitutional right, the court "must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

81.     "It then must identify and evaluate the precise interests put forth by the State as justifications for the burden imposed by its rule." *Id.*

82.     When fundamental "rights are subject to 'severe' restrictions, the regulation must be narrowly drawn to advance a state interest of compelling importance." *Burdick v. Takushi*, 504 U.S. 428, 432 (1992).

83.     The burdens imposed on the fundamental First and Fourteenth Amendment rights of unbracketed candidates by New Jersey's ballot bracketing system are severe. That is because New Jersey published candidates who do not wish to bracket or associate with others on the same ballot to conferring inferior ballot position on them, thus guaranteeing that they will lose elections.

84.     As such, New Jersey's ballot bracketing system is subject to strict scrutiny. *Id.*

85.     There is no compelling state interest for New Jersey's ballot bracketing system.

86.     New Jersey's ballot bracketing system is not narrowly tailored.

87.     Therefore, New Jersey's ballot bracketing system is unconstitutional under the First and Fourteenth Amendments of the United States Constitution. *Id.*

COUNT TWO

VIOLATION OF CIVIL RIGHTS – 42 U.S.C. § 1983

88.     Plaintiff realleges and incorporates by reference paragraphs 1 through 87 of the Complaint as though set forth fully herein.

89.     At all times relevant herein, Defendants were acting under color of law.

90.     At all times relevant herein, Defendants have deprived Plaintiff of the rights, privileges and immunities guaranteed to him under the United States Constitution, specifically the First Amendment and Fourteenth Amendment thereof.

91.   Defendants have deprived Plaintiff of his rights, privileges and immunities by administering an unlawful ballot bracketing system.

92.   Pursuant to 42 U.S.C. § 1983, Defendants are liable to Plaintiff for depriving him of the rights, privileges and immunities guaranteed to him by the First and Fourteenth Amendments by administering an unfair system of elections using New Jersey's ballot bracketing system.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Eugene Mazo requests judgment be entered in his favor and against Defendants as follows:

A.   A declaration that New Jersey's ballot bracketing system is unconstitutional because it violates Plaintiff's First and Fourteenth Amendment rights;

B.   A declaration that New Jersey's ballot bracketing system serves no compelling governmental interest;

C.   A declaration that New Jersey's ballot bracketing system is not the least-restrictive means that the state possesses to advance any governmental interest;

D.   A declaration that New Jersey's ballot bracketing system is not appropriately tailored to serve any governmental interest;

E.   Such injunctive relief as this Court may direct;

F.   Costs and attorneys' fees pursuant to any applicable statute or authority;

G.   Any other relief this Court may grant in its discretion.

Respectfully submitted,

/s/ Walter M. Luers
Walter M. Luers, Esq.
LAW OFFICES OF WALTER M. LUERS, LLC
The Corbit Building
67 Beaver Ave., Suite 18
Annandale, NJ 08801
*Counsel of Record for Plaintiff*

Dated: July 6, 2020