UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
NEWARK DIVISION

| | |
|---|---|
| EUGENE MAZO, | Civil Action |
| | |
| *Plaintiff*, | 2:20-cv-08336-SDW-LDW |
| | |
| v. | PLAINTIFF'S RESPONSE TO |
| | DEFENDANT JOANNE RAJOPPI'S AND |
| CHRISTOPHER J. DURKIN, in his official | E. JUNIOR MALDONADO'S |
| capacity as Essex County Clerk, et al., | <u>MOTIONS TO DISMISS</u> |
| | |
| *Defendants*. | |
| | **RETURN DATE:  OCT. 19, 2020** |

Walter M. Luers, Esq.
Cohn Lifland Pearlman
Herrmann & Knopf LLP
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
(201) 845-9600, ext. 144
wml@njlawfirm.com
*Counsel of Record for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................. ii

FACTUAL ALLEGATIONS ............................................................................................... 1

LEGAL STANDARD .......................................................................................................... 3

ARGUMENT ....................................................................................................................... 4

    I.   THE DEFENDANTS ARE PROPER LITIGANTS AND RESPONSIBLE FOR PLAINTIFF'S INJURY ..... 4

    II.  THE PLAINTIFF'S CLAIMS ARE JUSTICIABLE ...................................................... 13

CONCLUSION..................................................................................................................... 17

<u>TABLE OF AUTHORITIES</u>

Cases

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................3, 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................3

*Belitskus v. Pizzingrilli*,
    343 F.3d 632 (3d Cir. 2003)..................................................................................15, 16

*Bostic v. Schaefer*,
    760 F.3d 352 (4th Cir. 2014) ............................................................................11, 12, 13

*Constitution Party of Pa. v. Cortes*,
    824 F.3d 386 (3d Cir. 2016)........................................................................................7

*Davis v. Fed. Election Comm'n*,
    554 U.S. 724 (2008)..........................................................................................14, 15, 16

*De La Fuente v. Cortés*,
    261 F. Supp. 3d 543 (M.D. Pa. 2017) ......................................................................13

*De La Fuente v. Cortés*,
    751 F. App'x. 269 (3d Cir. 2018) ..............................................................................13

*Ex Parte Young*,
    209 U.S. 123 (1908)....................................................................................................7

*Fed. Election Comm'n v. Wis. Right to Life, Inc.*,
    551 U.S. 449 (2007)..............................................................................................13, 14

*Finberg v. Sullivan*,
    634 F.2d 50 (3d Cir. 1980) (*en banc*) ......................................................................7, 12

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009)........................................................................................4

*Globe Newspaper Co. v. Superior Court*,
    457 U.S. 596 (1982)..................................................................................................13

*Green Party of Tenn. v. Hargett*,
    767 F.3d 533 (6th Cir. 2014) ....................................................................................13

*Int'l Org. of Masters. Mates & Pilots v. Brown*,
    498 U.S. 466 (1991)..................................................................15

*Jacobson v. Fla. Sec'y*,
    957 F.3d 1193 (11th Cir. 2020) ........................................8, 10, 13

*Kamal v. J. Crew Grp., Inc.*,
    918 F.3d 102 (3d Cir. 2019)........................................................8

*Merle v. United States*,
    351 F.3d 92 (3d Cir. 2003).............................................14, 15, 16

*Norman v. Reed*,
    502 U.S. 279 (1992)..................................................................15

*Quaremba v. Allan*,
    128 N.J. Super. 570 (App.Div.1974) ........................................8

*Phillips v. Cnty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008).....................................................3, 14

*Schundler v. Donovan*,
    77 N.J. Super. 339 (2005) ........................................................8

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)..............................................................8

*Worley v. Cruz-Bustillo*,
    717 F.3d 1238 (11th Cir. 2013) ...............................................13

CONSTITUTION AND STATUTES

New Jersey Const. Art. II, §1..............................................................7

New Jersey Const. Art. V, §4, cl. 3.....................................................7

New Jersey Const. Art. VII, §1, cl. 1...................................................7

New Jersey Const. Art. VII, §2, cl. 2...................................................7

New Jersey Const. Art. XI, §1, cls. 2, 3 ..............................................7

New Jersey Stat. § 19: 9-2 .............................................................3, 6

New Jersey Stat. § 19: 23-5 ...............................................................6

iii

New Jersey Stat. § 19: 23-6 ..................................................................................................6

New Jersey Stat. § 19: 23-7 ..................................................................................................6

New Jersey Stat. § 19: 23-8 ..................................................................................................6

New Jersey Stat. § 19: 23-10 ................................................................................................6

New Jersey Stat. § 19: 23-11 ................................................................................................6

New Jersey Stat. § 19: 23-14 ................................................................................................6

New Jersey Stat. § 19: 23-17 .............................................................................................3, 6

New Jersey Stat. § 19: 23-19 ................................................................................................6

New Jersey Stat. § 19:23-21 .................................................................................................6

New Jersey Stat. § 19:23-22 .................................................................................................6

New Jersey Stat. § 19:23-22.4 ...........................................................................................2, 6

New Jersey Stat. § 19:23-24 ........................................................................................ *passim*

New Jersey Stat. § 19:23-25.1 ...........................................................................................3, 6

New Jersey Stat. § 19:23-55 .................................................................................................6

New Jersey Stat. § 19:49-1 ................................................................................................3, 6

New Jersey Stat. § 19:49-2 ................................................................................................3, 6

New Jersey Stat. § 19:31-6a ..............................................................................................3, 5

New Jersey Stat. § 52:16A-98 ...........................................................................................3, 5

Va. Code § 15.2-1634 .........................................................................................................11

Va. Code § 32.1-251 ...........................................................................................................11

DOCUMENTS FROM THE RECORD

Complaint, DN 1 ........................................................................................................1

Defendant's Brief in Support of Motion to Dismiss, DN 9-1 ............................................... *passim*

Plaintiff Eugene Mazo ("Plaintiff"), by counsel, submits this response to Defendants Joanne Rajoppi's and E. Junior Maldonado's (the "Defendants") Motions to Dismiss.[1]

<u>FACTUAL ALLEGATIONS</u>

Plaintiff's Complaint alleges that New Jersey's unique primary ballot bracketing system (the "Ballot Bracketing System") violates his First and Fourteenth Amendment rights under the United States Constitution.  (<u>See</u> Compl., DN 1, ¶¶ 1, 7, 9, 31, 37, 49, 75).  New Jersey's Ballot Bracketing System results from a combination of state statutes and case law that combine to determine how the state's primary ballots are designed. (<u>Id</u>. at ¶¶ 4, 50, 53-55).  Candidates running for one office who request and receive permission to "bracket" with candidates running for a different office are entitled to appear on the same column or row on the state's primary ballots. (<u>Id</u>. at ¶¶ 54-55).  Such "bracketed" candidates are consistently afforded preferential ballot treatment by the state's county clerks. (<u>Id</u>. at ¶¶ 50, 56-60).  When candidates bracket with one another, only one candidate's name must be drawn for the ballot by the county clerk, and all other candidates who happen to be bracketed with that candidate automatically get placed on the same line or row of the ballot. (<u>Id</u>. at ¶¶ 4, 54-55, 64-65).  By contrast, clerks draw the names of unbracketed candidates in subsequent, non-preferential ballot draws, ensuring these candidates unfavorable ballot position. (<u>Id</u>. at ¶¶ 60-61, 66-67).  This Ballot Bracketing System provides a state-sponsored advantage to certain candidates, while it fails to ensure the equal protection of the laws to other candidates who are seeking the same office. (<u>Id</u>. at ¶¶ 7, 30, 36, 48, 75).

Plaintiff is a law professor and an expert in election law who was a candidate for the U.S. House of Representatives in the 2020 Democratic Party election in New Jersey's Tenth

---

[1] Defendant Maldanado's motion to dismiss was filed in Pacer as a cross-motion for summary judgment.  However, the motion itself is styled as a motion to dismiss, and we will treat it as such in this Response.

Congressional District. (Id. at ¶¶ 14, 19).  Plaintiff holds unique political beliefs that did not make it easy for him to bracket with any other candidates on the primary ballot. (Id. at ¶ 20). Accordingly, he ran as an unbracketed candidate, and the county clerks in each county in the Tenth Congressional District drew his name for the ballot in a non-preferential ballot draw. (Id. at ¶¶ 28, 35, 46). This guaranteed that Plaintiff would receive unfavorable ballot position vis-a-vis his opponent for Congress, who had bracketed with other candidates. (Id. at ¶¶ 30, 36, 47-48).

Plaintiff alleges that Defendants caused his injuries. In Hudson County, Defendant Maldonado did not include Plaintiff in a preferential ballot draw and caused his name to appear on Column D of the primary ballot, thus guaranteeing Plaintiff's bracketed opponent much better ballot position. (Id. at ¶¶ 32, 34-26).  In Union County, Defendant Rajoppi first mistakenly drew Plaintiff's name in the Republican ballot draw, and then told Plaintiff, when correcting her mistake, that his name would be placed at the end of the Democratic primary ballot because he had not bracketed with another candidate and was ineligible to receive better ballot position. (Id. at ¶¶ 41-46).  Plaintiff was placed in Column E of the Union County ballot, while Defendant Rajoppi afforded Plaintiff's bracketed primary opponent much better ballot position. (Id. at ¶¶ 47-48). Defendant Rajoppi's and Maldonado's actions violated Plaintiff's constitutional rights and led directly to the filing of this lawsuit. (Id. at ¶¶ 37, 49).  Plaintiff was defeated in his primary election. However, he intends to run again for the same office in the 2022 election, when he again intends not to bracket with any other candidate on the primary election ballot. (Id. at ¶¶ 21).

The New Jersey Secretary of State is the state's chief election official. See N.J. Stat. §§ 19:31-6a; 52:16A-98. However, she does not control the substantive content or design of the state's primary election ballots. Rather, in New Jersey, the county clerks prepare the primary election ballots in their respective counties. See N.J. Stat. §§ 19:23-22.4.  The county clerks are responsible

for the structure, format, and substantive content of these ballots. <u>See</u> N.J. Stat. §§ 19:9-2; 19:23-17; 19:23-24; 19:23-25.1; 19:49-1; 19:49-2. The county clerks are also responsible for holding a ballot draw to determine the order in which the names of candidates seeking public office appear on the ballot. (<u>See</u> Compl., at ¶¶ 56); <u>see</u> <u>also</u> N.J. Stat. §§ 19:23-24 ("The position which the candidates and bracketed groups of names of candidates . . . shall have upon the ballots used for the primary election . . . shall be determined by the county clerks in their respective counties")).

The moving Defendants are two New Jersey county clerks who were responsible for determining where Plaintiff's name appeared on the Democratic primary ballot in their respective counties in 2020. Because of the state's Ballot Bracketing System, Defendants acted in a way that violated Plaintiff's constitutional rights in 2020. They will act in a similar manner in 2022.

<u>LEGAL STANDARD</u>

When ruling on a motion to dismiss under Fed. R. Civ. P 12(b)(6), the Court must accept all factual allegations in the Plaintiff's complaint as true and draw all inferences in the light most favorable to the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). The complaint "does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.*

A motion to dismiss must be denied if the complaint alleges enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

3

District courts "should conduct a two-part analysis" "when presented with a motion to dismiss for failure to state a claim." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, after separating the factual and legal arguments in a complaint, the Court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id*. at 210-11. Second, the Court must decide "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Id*.

<u>ARGUMENT</u>

Plaintiff's Complaint states a valid claim for relief under the First and Fourteenth Amendments. Defendants Rajoppi and Maldonado are proper defendants in this litigation because as county clerks they operated under, and were charged with enforcing, the Ballot Bracketing System. As officials charged with designing the primary ballots in their respective counties, the Defendants acted in a way that denied the Plaintiff the equal protection of the laws and an equal opportunity to obtain preferential ballot position on the primary election ballot in 2020. The Defendants were responsible for Plaintiff's injury. And the Ballot Bracketing System caused a First and Fourteenth Amendment injury to the Plaintiff that is "capable of repetition, yet evading review." Therefore, the Defendants' Motions to Dismiss should be denied.

**I.     The Defendants are Proper Litigants and Responsible for Plaintiff's Injury.**

The Defendants are proper litigants and responsible for the Plaintiff's injury. Plaintiff wanted to be treated the same as all other candidates running for the same office, including the opportunity to be featured on the first line or row of the primary ballot. Defendants are responsible for designing and printing the primary ballots in their respective counties. The Ballot Bracketing

System authorizes Defendants to design New Jersey's primary ballots and affords them the discretion to hold a preferential ballot draw among bracketed candidates. The Defendants refused to include Plaintiff in this preferential draw because he chose to exercise his First Amendment right not to associate or bracket with other any other candidate on the ballot. He thus stood for election as an unbracketed candidate. By enforcing the Ballot Bracketing System, Defendants failed to treat Plaintiff in the same way they treated his bracketed congressional opponent. Accordingly, they are proper defendants and their actions are a cause of the Plaintiff's injury.

Defendants present themselves as mere spectators in the New Jersey election system and argue that the Secretary of State is the only state official that has any authority to enforce New Jersey's election statutes. (See Brief in Supp. of Mot. to Dismiss, DN 9-1, 6). Defendants assert that they are not proper defendants in this litigation and that Plaintiff cannot prove causation to establish Article III standing. (Id.). Specifically, they claim that they (1) "performed no action" to cause Plaintiff's constitutional injury because their position simply requires them to comply with the law; (2) "hold no authority" to enforce New Jersey's election statutes; (3) are required by law to bracket candidates who agree to run on the same line; and (4) cannot have caused injury to Plaintiff because New Jersey courts have found that county clerks have "discretion" to bracket certain slates of affiliated candidates. (Id.). The Defendants wish us to believe that they have little or no role to play when it comes to designing the ballot. But they are selling themselves short.

Defendants are not passive onlookers in the ballot design process; rather, under New Jersey law, Defendants are responsible for administering the state's elections within their respective counties and, in undertaking this endeavor, they wield enormous power and discretion not only in designing the state's primary ballots, but also in determining where candidates' names appear on them. In their official capacity as county clerks, the Defendants are directly responsible for giving

5

effect to the Ballot Bracketing Scheme that is at issue in this litigation. The Secretary of State is the chief election official. *See* N.J. Stat. §§ 19:31-6a; 52:16A-98.  But the Defendants are elected constitutional public officers who function independently of the gubernatorially appointed Secretary of State. *See* New Jersey Const. Art. V, § 4, cl. 3; Art. VII, § 2, cl. 2.  County clerks work in concert with the Secretary of State only insofar as they are required to by statute. *See*, *e.g.*, N.J. Stat. §§ 19:23-21; 19:23-22; 19:23-55. vIndeed, an individual who wishes to run for public office in a primary election at the county level of state government will have no contact whatsoever with the Secretary of State; rather, the relevant county clerk accepts that candidate's filed nomination documents and is responsible for qualifying her for the primary ballot. *See* N.J. Stat. §§ 19:23-5; 19:23-6; 19:23-7; 19:23-8; 19:23-10; 19:23-11; 19:23-14; 19:23-17; 19:23-19; 19:23-22.

For county candidates, statewide candidates, and federal candidates alike, the Defendants, and no other public officials, are ultimately responsible for printing and designing the shape and content of the primary election ballots on which these candidates' names appear. Defendants are accountable for the substantive content and format of the primary election ballots, and therefore it is they who are responsible for enforcing and sustaining New Jersey's Ballot Bracketing System. *See* N.J. Stat. §§ 19:9-2; 19:23-17; 19:23-22.4; 19:23-24; 19:23-25.1; 19:49-1; 19:49-2.

Defendants have the responsibility of enforcing and complying with the law in New Jersey, including the state statutes and state case law that combine to create the Ballot Bracketing System. The Defendants admit that their position "requires" them "to fully comply with the ballot bracketing laws." (See Brief in Supp. of Mot. to Dismiss, DN 9-1, 5).  Indeed, before assuming their public office, each county clerk must take an oath to support the New Jersey constitution,

which means they must use their authority to enforce the state's laws, including its Ballot Bracketing System. *See* New Jersey Const. Art. II, § 1; Art. VII, § 1, cl. 1; Art. XI, § 1, cls. 2, 3.

A public official is "properly named as a defendant if the official 'by virtue of his office has some connection with the enforcement of the [law at issue].'" *Finberg v. Sullivan*, 634 F.2d 50, 54 (3d Cir. 1980) (*en banc*) (quoting *Ex Parte Young*, 209 U.S. 123, 157 (1908)). It is irrelevant if in their role in enforcing the Ballot Bracketing System, as the Defendants assert (see Brief in Supp. of Mot. to Dismiss, DN 9-1, 6), they "acted in accordance with" existing law (id.) and their actions were "entirely ministerial." *Finberg*, 634 F.2d at 54.  "[T]he inquiry is not into the nature of an official's duties but into the effect of the official's performance of his duties on the plaintiff's rights." *Id.*; *see also Constitution Party of Pa. v. Cortes*, 824 F.3d 386, 396 (3d Cir. 2016) (citing this quote from *Finberg*).  Courts "often" allow "suits to enjoin the performance of ministerial duties in connection with allegedly unconstitutional laws." *Finberg*, 634 F.2d at 54 (collecting cases).  It is irrelevant if, as the Defendants argue, their role "does not require [them] to evaluate the constitutional merit of the ballot bracketing laws." (See Brief in Supp. of Mot. to Dismiss, DN 9-1, 5).  Once they "have relied on the authority conferred by the [Ballot Bracketing System] to work an injury to the plaintiff[s], they may not disclaim interest in the constitutionality of these [laws]." *Finberg*, 634 F.2d at 54.

Put simply, if there is a "connection" between the Defendants and enforcement of the Ballot Bracketing System, then they are properly named litigants in this case. *Id*.

Likewise, if Plaintiff's constitutional injury '"is fairly traceable'" to the Defendants' discriminatory act against Plaintiff, or to their failure to afford Plaintiff the same treatment of the law that other candidates running for the exact same office, including Plaintiff's opponent, receive, then the causation requirement of Article III standing is established and Plaintiff's injury '"is likely

7

to be redressed by a favorable judicial decision.'" *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 110 (3d Cir. 2019) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016)).

The Defendants admit that it is "within the bounds of discretion for a county clerk to bracket" candidates together on the ballot. (See Brief in Supp. of Mot. to Dismiss, DN 9-1, 6).  In fact, New Jersey law clearly provides that ballot order is to be determined by the county clerk. *See* N.J. Stat. §§ 19:23-24.  "The clerk has the responsibility to deal with petitions for the elections and to set up the ballot arrangements and array." *Schundler v. Donovan*, 77 N.J. Super. 339, 353, 872 A.2d 1092, 1095 (2005) (quoting *Quaremba v. Allan*, 128 N.J. Super. 570, 321 A.2d 266 (App.Div.1974)).  "Unless specifically directed by statute as to a procedure, the clerk has discretion in carrying out this responsibility." (Id.).  Accordingly, there is a direct connection between the Defendants' "responsibility" to design the ballot and the Plaintiff's injury. As such, the challenge to the Ballot Bracketing System being brought by this lawsuit properly names the Defendants as defendants. The Defendants' actions, under the Ballot Bracketing System, are directly traceable to Plaintiff's injury. Therefore, the Defendants are properly named litigants in this case.

The Eleventh and Fourth Circuits faced these issues when they had to determine which state officials were proper defendants and could provide the requested relief. In *Jacobson v. Fla. Sec'y*, 957 F.3d 1193, 1197 (11th Cir. 2020), the plaintiffs filed a constitutional challenge to a Florida election law that governed the order candidates appeared on the ballot, but they sued only the Florida Secretary of State for injunctive relief. The district court found for the plaintiffs and "permanently enjoined the Secretary – and the 67 county Supervisors of Elections, none of whom were made parties to [the] lawsuit – from preparing ballots in accordance with the law." *Id*. at 1198. The trial court held the Secretary was "responsible for ballot order because she [was]

Florida's 'chief election officer.'" *Id*. at 1199. Even though state law "task[ed] the nonparty Supervisors with placing candidates on the ballot in the correct order, [], the district court ruled that relief against the Secretary could redress the [plaintiffs'] injuries." *Id*. at 1199-1200.

However, the Eleventh Circuit reversed the district court. *Id*. at 1198.  It held that the Supervisors of Elections were "responsible for placing the candidates on the ballot in the order the law prescribes," and because they were not parties in the litigation the case should be dismissed. *Id*. Under Florida law, the Secretary was only responsible for certifying the names to be placed on the ballot to the Supervisors. *Id*. at 1207.  "Because the Secretary didn't do (or fail to do) anything that contributed to their harm," the plaintiffs failed to prove causation for Article III standing. *Id*. (punctuation marks and citation omitted).

The Court explained that its decision rested "on the reality that the Supervisors are independent officials under Florida law who are not subject to the Secretary's control. The Supervisors are constitutional officers who are elected at the county level by the people of Florida; they are not appointed by the Secretary." *Id*.  The only control the Secretary had over the Supervisors was "through coercive judicial process," *i.e*., she could sue them. *Id*.  The fact that the Secretary "must resort to judicial process if the Supervisors fail to perform their duties underscores her lack of authority over them." *Id*. at 1207-08.  "Because the Supervisors are independent officials not subject to the Secretary's control, their actions to implement the ballot statute may not be imputed to the Secretary" to establish causation. *Id*. at 1208.  "Contrary to the reasoning of the district court, the Secretary's position as 'the chief election officer of the state,' with 'general supervision and administration of the election laws,' does not make the order in which candidates appear on the ballot traceable to her." *Id*.

Because there was no "evidence that the Secretary controls ballot order, the [plaintiffs could not] rely on the Secretary's general election authority to establish traceability." *Id*. (citation omitted). State law "expressly" gave "a different, independent official control over the order in which candidates appear on the ballot." *Id*. The Secretary could not cause "any injury" the plaintiffs might suffer. *Id*. Accordingly, relief against the Secretary would not redress their injury – "either directly or indirectly." *Id*. (internal quotation marks and citation omitted). An injunction against the Secretary would not give the plaintiffs their desired relief, "for neither she nor her agents control the order in which candidates appear on the ballot. Nor can declaratory relief against the Secretary directly redress any injury to the [plaintiffs]. A declaratory judgment against the Secretary does not bind the Supervisors, who are not parties" to the case. *Id*. (internal quotation marks omitted). Unless the Supervisors were parties to the case, no ruling from the court could bind them. *Id*. "If a plaintiff sues the wrong defendant, an order enjoining the correct official who has not been joined as a defendant cannot suddenly make the plaintiff's injury redressable." *Id*. at 1209.

Here, the New Jersey Secretary of State cannot force the Defendants to design the primary election ballots in a different way, and thus the Defendants must be defendants in this action in order for Plaintiff to obtain relief. The Secretary, while powerful, is a political appointee. The Defendants are duly elected public officials. Just as no state official had direct control over the other in *Jacobson*, the Secretary has no control over the Defendants other than through the judicial process. Under New Jersey law, the Secretary has no authority over the design of the primary election ballots, or, consequently, their content. Only the Defendants have that authority. Like the Supervisors, state law expressly gives the Defendants control over the design and printing of the primary election ballots. Accordingly, if the Plaintiff believes that the drawing and design of the

primary ballots in Hudson and Union Counties was done in a way that violated his constitutional rights, then he must sue the Defendants to force them to directly redress his injury. Therefore, the Defendants are proper litigants in this case and a cause of Plaintiff's injuries.

Similarly, in *Bostic v. Schaefer*, 760 F.3d 352, 367-69 (4th Cir. 2014), the Fourth Circuit faced an Article III standing issue when a same-sex couple brought a constitutional claim against Virginia's marriage laws. A Virginia same-sex couple wanted to get married in Virginia.[2] *Id*. at 368. The plaintiffs sued the Clerk of the Circuit Court in the jurisdiction where they sought a marriage license because that public official denied them an application for a marriage license. *Id*. at 368-69, 371. They also sued the State Registrar of Vial Records because she was responsible for "developing Virginia's marriage license application form and distributing it to the circuit court clerks throughout Virginia." *Id*. at 371. The Registrar was also "responsible for ensuring compliance with the Commonwealth's laws relating to marriage in general" and "those laws that limit marriage to opposite-sex couples and that refuse to honor the benefits of same-sex marriages lawfully entered into in other states." *Id*.

During its standing analysis, the Fourth Circuit recognized a dichotomy between the Clerk, an elected public official, *see* Va. Code § 15.2-1634, and the Registrar, an appointed public official, *see* Va. Code § 32.1-251, and how they worked in tandem to enforce Virginia's marriage laws. *Bostic*, 760 F.3d at 371-72. The Circuit Clerk had "the requisite connection to the enforcement of the Virginia Marriage Laws due to his role in granting and denying applications for marriage licenses." *Id*. at 371 n.3. Granting the Virginia couple the relief they sought would redress their constitutional injuries. *Id*. at 371. Accordingly, they had standing to sue the Circuit Clerk. *Id*.

---

[2] A California same-sex couple relocated to Virginia and wanted their out-of-state marriage recognized in the commonwealth. *Id*. 369. But, for the purposes of this response, only the Virginia couple's standing analysis is relevant.

Likewise, the Registrar's "promulgation of a marriage license application form that does not allow same-sex couples to obtain marriage licenses resulted in [the Circuit Clerk's] denial of [the Virginia couple's] marriage license request." *Id*. at 372. And because they could "trace [their] injury to [the Registrar] due to her role in developing the marriage license application form in compliance with the Virginia Marriage Laws," the Virginia couple had standing to sue the Registrar. *Id*. As it was with their claims against the Circuit Clerk, granting the relief the Virginia couple sought from the Registrar, "would redress their injuries." *Id*. at 372.

Here, the Plaintiff is in the same situation as the plaintiffs in *Bostic* – he must sue two different public officials to obtain the relief that he seeks. The New Jersey Secretary of State and Defendants are separate public officials that do not answer to one another, have different roles in the primary election process, and are responsible for enforcing state election laws—including the Ballot Bracketing System at issue in this action. Like the Registrar, the Secretary is responsible for ensuring compliance with state election law. But the Secretary cannot force the Defendants to design the on the primary election ballot in a particular way any more than the Registrar could force the Circuit Clerk to issue an application for a marriage license to the *Bostic* plaintiffs. Because the Defendants are responsible for designing the ballots, they have "some connection with the enforcement of the [Ballot Bracketing System]," and are proper defendants in this case. *Finberg*, 634 F.2d at 54 (internal quotation marks omitted). And when the Defendants enforce the Ballot Bracketing System by refusing to draw names for the ballot and then to design it in such a way as to not discriminate against the Plaintiff, they cause an injury to the Plaintiff.

Plaintiff cannot receive the relief he seeks unless he sues the Defendants. That is because New Jersey law vests them—not the Secretary of State—with the authority to design the primary

election ballots in the respective counties. The names of primary candidate running for elected office are printed on the primary election ballots in the exact order that the Defendants direct.

The Eleventh Circuit dismissed the case in *Jacobson* because those plaintiffs failed to sue the party actually in control of the content of the ballots. 957 F.3d at 1198, 1207-08. But the *Bostic* plaintiffs obtained the relief they sought because they sued all relevant state officials. 760 F.3d at 367, 371-72. For the Plaintiff here to avoid the fate of the *Jacobson* plaintiffs and enjoy the success of the *Bostic* plaintiffs, the Defendants must remain in this case. Accordingly, the Defendants' Motions to Dismiss should be denied.

## II.     Plaintiff's Claims are Justiciable.

Plaintiff's First and Fourteenth Amendment challenge against the Ballot Bracketing System is justiciable. Because Plaintiff's claims are "capable of repetition, yet evading review," they "fit comfortably within the established exception to mootness," *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (collecting cases), and are ripe for review. *See De La Fuente v. Cortés*, 261 F. Supp. 3d 543, 549-50 (M.D. Pa. 2017) (*aff'd*, 751 F. App'x. 269 (3d Cir. 2018)) (plaintiff's constitutional claims against state election laws were neither moot after his 2016 campaign nor unripe before his 2020 campaign because his past and intended campaign efforts were "capable of repetition yet evading review," and, therefore, justiciable); *Green Party of Tenn. v. Hargett*, 767 F.3d 533, 545 n.1 (6th Cir. 2014) (plaintiff's claims against a state election law were neither moot nor unripe because they "were capable of repetition, yet evading review,"); *Worley v. Cruz-Bustillo*, 717 F.3d 1238, 1242 n.2 (11th Cir. 2013) (same). *See also Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 623 n.3 (1982) (Stevens, J., dissenting) ("The 'capable of repetition, yet evading review' exception to the mootness doctrine generally is compatible with our settled policy of avoiding the premature adjudication of constitutional

questions for an [issue] that is capable of repetition yet evading review generally is no less ripe for review the first time it is presented than it would be on subsequent occasions." (citations omitted)).

The "capable of repetition, yet evading review," exception applies when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Wis. Right to Life, Inc.*, 551 U.S. at 462.

Plaintiff was a candidate for the 2020 Democratic Party nomination for the U.S. House of Representatives in New Jersey's Tenth Congressional District and intends to be a candidate again in the same district and for the same elected office in 2022. In 2022, he again will not bracket with any other candidate on the primary ballot. Accordingly, Plaintiff will be subject to the Ballot Bracketing System again, as well as be subject to a non-preferential ballot draw again, in violation of his First and Fourteenth Amendment constitutional rights. Here, the Court must accept these factual allegations as true, *Phillips*, 515 F.3d at 228, and give credit to the Plaintiff's own stated political plans. And it must conclude that the Ballot Bracketing System will violate the Plaintiff's First and Fourteenth Amendment rights again in the 2022 primary election.

In *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 736 (2008), the candidate plaintiff made his jurisdiction-sustaining political intentions known not just after the litigation began, or even after the district court decision, but in a public statement he made shortly before filing his U.S. Supreme Court reply brief. The Supreme Court noted the plaintiff's intent to "self-finance another bid for a House seat," and, on that basis alone, the Court was "satisfied that [his] facial challenge [was] not moot." *Id*.

Also, the Third Circuit has ruled that "most election cases[] fit[] squarely within the 'capable of repetition yet evading review' exception," *Merle v. United States*, 351 F.3d 92, 94 (3d

Cir. 2003), and that "it is reasonable to expect political candidates to seek office again in the future." *Belitskus v. Pizzingrilli*, 343 F.3d 632, 648 n.11 (3d Cir. 2003).

Indeed, the Third Circuit has ruled candidates would run in subsequent elections with less evidence than what the Plaintiff has provided in this case. In *Belitskus*, candidates challenged a state ballot access law for the 2000 general election without expressing any intent of running in a subsequent election. *Id*. at 636-37, 648 n.11. After the election, the Court did not dismiss the case as moot because it believed similarly situated candidates would challenge the law in future election cycles. *Id*. at 648 n.11.

In *Merle*, the Third Circuit rejected the argument that the case was moot because the 2002 U.S. House of Representatives race was over, and the plaintiff did not win the election. 351 F.3d at 94. The Court ruled that a race for the House of Representatives is too short for a candidate's election law claim "to be litigated fully prior to the cessation or expiration" of the election. *Id*. at 95. The government argued that there was no evidence that the *Merle* plaintiff intended to be a candidate for Congress again in 2004 to challenge the constitutionality of the offending statute. *Id*. The Third Circuit held evidence that the *Merle* plaintiff intended to run for the House of Representatives again was unnecessary and assumed he would run for election "either in 2004 or at some future date." *Id*. (citing *Int'l Org. of Masters. Mates & Pilots v. Brown*, 498 U.S. 466, 473 (1991); *Norman v. Reed*, 502 U.S. 279, 288 (1992)). The Court went on to state, "Even if we were to require some expression of intent," the *Merle* plaintiff had implicitly stated in his briefs that he and similarly situated individuals would be subject to the offending statute in future elections. *Id*. Therefore, the *Merle* plaintiff's claims were "capable of repetition, yet evading review." *Id*.

Under *Davis*, *Belitskus*, and *Merle*, this case meets the two requirements of the "capable of repetition, yet evading review" exception to the mootness and ripeness doctrines. First, the Third

Circuit has ruled that an election campaign for the U.S. House of Representatives is too short in duration "to be litigated fully prior to the cessation or expiration" of the election. *Merle*, 351 F.3d at 95.

Second, there is a reasonable expectation that the Plaintiff will be subject to the Ballot Bracketing System again. Plaintiff stated in his Complaint that he intended to run for the 2022 Democratic Party nomination for the U.S. House of Representatives in New Jersey's Tenth Congressional District, and, consequently, he will be subject to the Ballot Bracketing System again. This is far more evidence of an intent to be a candidate in subsequent elections than the plaintiffs in *Davis*, *Belitskus*, or *Merle* provided and none of these cases were dismissed as moot or unripe.

Plaintiff will run for Congress again in 2022 and the election cycle is too short to complete this litigation. Accordingly, his First and Fourteenth Amendment claims against Ballot Bracketing System are "capable of repetition, yet evading review." Therefore, Defendants' Motion to Dismiss should be denied.

CONCLUSION

For the stated reasons, Defendant Joanne Rajoppi's and E. Junior Maldonado's Motion to

Dismiss should be denied.

Respectfully submitted,

/s/ Walter M. Luers

Walter M. Luers, Esq.
COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP
Park 80 West – Plaza One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ  07663
(201) 845-9600, ext. 144
wml@njlawfirm.com
*Counsel of Record for Plaintiff*

Dated: October 5, 2020